UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X    Index No.:
UNIQUA SMITH,

**COMPLAINT**

                Plaintiff,

     -against-

**PLAINTIFF DEMANDS A TRIAL BY JURY**

FACTORY DIRECT ENTERPISES LLC. d/b/a/ ASHLEY FURNITURE HOMESTORE and JUSTIN CHRINIAN *(individually)*,

                Defendants.
-------------------------------------------------------------------------X

      Plaintiff, Uniqua Smith, by her attorney, The Rose Law Group PLLC upon information and belief, complains as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to <u>Title VII of the Civil Rights Act of 1964</u>, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and <u>the New York State Human Rights Law,</u> ("NYSHRL"), seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against** on the basis of her **gender**.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. Supplemental Jurisdiction is proper over the State law claims pursuant to 28 U.S. Code § 1367.

4. Venue is proper in this district based upon Defendants' residency within State of New York, within the Eastern District of New York. 28 U.S.C. §1391(b).

## PARTIES

5. That at all relevant times, Plaintiff Uniqua Smith ("Smith") is a resident of the state of New York.

6. That at all relevant times, Defendant Factory Direct Enterprises LLC. d/b/a/ Ashley Furniture Homestore ("FDE") does business in the State of New York.

7. That at all relevant times, Defendant FDE was and is a Domestic Business Corporation duly authorized and existing by virtue of the laws of the State of New York.

8. That at all relevant times, Defendant FDE's office where Plaintiff worked for a majority of her employment is located at 750 W Sunrise Hwy, Valley Stream, NY 11581-1007.

9. That at all relevant times, Defendant Justin Chrinian ("Chrinian") was and is the owner's son and acting area manager.

10. That at all relevant times, Defendant Chrinian was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

11. Defendant FDE and Defendant Chrinian are referred to herein as "Defendants."

## STATEMENT OF FACTS

12. Defendant FDE is an independently-owned Ashley's Furniture FDE franchise.

13. Defendant FDE is dominated by male leaders and there is only one female senior sales manager out of fourteen (14) of its locations.

14. Plaintiff was hired by an HR business partner and began work at Defendant FDE in or around August of 2016. She was immediately put into the manager-in-training program.

15. The manager-in-training program is a ninety (90) day probationary period where participants begin as product specialists and eventually move on to the senior sales manager position.

16. Plaintiff was selected to receive training from a senior sales manager until the new showroom

opened in October of 2016.

17. As a product specialist, Plaintiff was required to sell furniture in an effort to reach the store's sale goals. Plaintiff received a commission as part of her compensation.

18. The Valley Stream showroom opened on October 16, 2016 and Plaintiff was promoted to sales manager. She was selected amongst fifteen (15) people and had to undergo training for three (3) months under an outside senior sales manager.

19. As sales manager, Plaintiff oversaw the Valley Stream store. She opened and closed the store, conducted two (2) forty-five-minute meetings each day and kept track of the store's short term and long-term goals. Plaintiff was responsible for leading a team of product specialists and inspiring them to reach the store's sale goals.

20. In November of 2016, Defendant Chrinian hired a senior sales manager to train Plaintiff. Defendant Chrinian explained that Plaintiff's training would last for three months and then the senior sales manager position would be vacant and Plaintiff would receive a promotion.

21. Plaintiff learned a great deal from the senior sales manager while excelling in the sales manager position.

22. Plaintiff trained fellow employees and groomed five (5) of the top ten (10) employees in the company at the time.

23. Plaintiff never received any complaints about her performance. Rather, she was constantly commended for her outstanding work. On occasion, Defendant Chrinian would have her travel to other showrooms to help out.

24. Plaintiff communicated frequently with Defendant Chrinian about her path to senior sales manager and Defendant Chrinian gave her several tasks to complete before being offered the position.

25. Defendant Chrinian required that Plaintiff reach the store's 350 sales per guest (spg) goal, train other employees to become sales managers and urged her to wait for the current senior sales manager to move to another location.

26. Plaintiff satisfied each goal and the current senior sales manager moved to another location in May of 2017.

27. Even with the senior sales manager vacancy at Plaintiff's location, Defendant Chrinian refused to promote Plaintiff to senior sales manager as he had initially promised.

28. Instead, Defendant Chrinian promoted male product specialists to senior sales managers at other locations.

29. Plaintiff even saw a male product specialist whom she trained get promoted to senior sales manager at another location.

30. With no one to fill the senior sales manager role at Plaintiff's location, Plaintiff took on the task and began working more hours.

31. Plaintiff became responsible for deescalating customer issues and providing more coverage for the showroom in addition to her original sales manager tasks. She went from working forty (40) hours a week to working sixty (60) to seventy (70) hours a week.

32. Despite her increased workload and increased hours, Plaintiff remained in the sales manager position and continued to receive a $45,000 sales manager salary plus commission.

33. Plaintiff had been working tirelessly as a sales manager and an "acting" senior sales manager from May 2017 through July 2017.

34. Plaintiff reminded Defendant Chrinian about the status of her promotion in June 2017 and Defendant Chrinian suggested that she speak with the Director of Human Resources (HR) to see if HR would be willing to expedite the promotion.

35. Plaintiff was scheduled to meet with Defendant Chrinian and HR on June 2017 but Defendant Chrinian never showed up. Plaintiff spoke with HR alone and was told that the promotion was up to Defendant Chrinian. Following the meeting, Defendant Chrinian back peddled and chastised Plaintiff for approaching HR about the promotion.

36. Plaintiff noticed a lack of communication and complete disregard for her position as sales manager. Defendant Chrinian avoided having lunch with her and began to treat her differently. He fired Plaintiff's team members without alerting her or asking for her input.

37. On one occasion Plaintiff disciplined one of her team members for being late and disruptive. Defendant Chrinian overrode Plaintiff and brought the team member back to work.

38. On another occasion Plaintiff alerted Defendant Chrinian that here was a bed bug on one of the beds in the store. Defendant Chrinian ignored Plaintiff and told her that bed bugs cannot be seen by the naked eye. However, when a male co-worker told Defendant Chrinian about the bed bug, Defendant Chrinian shut down the store for the day to resolve the issue.

39. On or about July 7, 2016 Plaintiff was called to the side to meet with HR and Defendant Chrinian. Defendant Chrinian told her that things were not working out and gave her an ultimatum. Plaintiff had the option of being demoted to the product specialist position or leaving the company.

40. Defendant Chrinian gave no explanation for the demotion and instead, remarked that the demotion was non-negotiable and gave her a week to think about it.

41. Plaintiff called Defendant Chrinian on or about July 13, 2017 and requested more time to think about the offer and Defendant Chrinian gave her more time. On or about July 18, 2017, Plaintiff received an email from HR stating that she was fired for abandoning the job.

42. Upon information and belief, this was a further discriminatory action as no male employees were terminated for refusing to take a demotion and the demotion was motivated by gender.

43. Upon information and belief, no male employees of Defendants were treated this way and, in fact, several less or equally qualified male employees were promoted above Plaintiff due to their gender.

44. Plaintiff was qualified for the position she was promised, however, due to her gender Defendants determined not to promote her into the position.

45. Upon information and belief there are no female managers working for Defendants.

46. Due to Defendants discriminatory actions, Plaintiff has suffered emotional distress, loss of income, loss of reputation, loss of earnings, loss of other value and has been otherwise damaged.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

47. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

48. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and gender.

49. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her gender.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

50. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

51. Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice:  (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or

disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

52. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff solely due to her gender and in retaliation for her refusal to give into Defendant Singh's sexual advances.

## **JURY DEMAND**

53. Plaintiff demands a trial by jury.

**[SECTION LEFT BLANK INTENTIONALLY]**

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII and the NYSHRL by discriminating against Plaintiff on the basis of her gender;

B. Awarding all wages not paid as required under Title VII and NYSHRL, plus any liquidated damages;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Astoria, New York
June 13, 2018

**THE ROSE LAW GROUP, PLLC**

Jesse C. Rose (JR-2409)
3109 Newtown Avenue
Suite 309
Astoria, New York 11102
PH: (718) 989-1864
Fax: (917) 831-4595